# Application of the Emoluments Clause of the Constitution and the Foreign Gifts and Decorations Act

The Emoluments Clause of the Constitution prohibits government employees from accepting any sort of payment from a foreign government, except with the consent of Congress Congress has consented to the receipt of minimal gifts from a foreign state, 5 U.S.C. § 7342, but has not consented to receipt of compensation for services rendered.

The fact that an employee of the Nuclear Regulatory Commission would be paid by an American consulting firm for services he rendered in connection with construction of a nuclear power plant in Mexico would not, under the circumstances presented here, avoid the Emoluments Clause, since the Mexican government would be the actual source of the payment

February 24, 1982

## MEMORANDUM OPINION FOR THE
## ASSISTANT GENERAL COUNSEL,
## UNITED STATES NUCLEAR REGULATORY COMMISSION

This responds to your letter asking for an interpretation of the Emoluments Clause of the Constitution, Article I, § 9, cl. 8, and the Foreign Gifts and Decorations Act, 5 U.S.C. § 7342 (Supp. III 1979).

According to your letter and subsequent conversations with Nuclear Regulatory Commission (NRC) staff, an employee of the NRC is seeking authorization to work on his leave time for an American consulting firm. In that capacity he would review the design of a nuclear power plant being constructed in Mexico. The plant is being built by the Mexican government through its Federal Electrical Commission.

The American consulting firm would be under contract to the Federal Electrical Commission; that firm would compensate the NRC employee for his expenses and services. The American firm has no other nuclear contracts and would be relying solely on the experience of this employee in securing the contract. The employee's work at NRC involves the assessment of operating reactors. This is the same job he will perform in Mexico. The consulting firm is a small firm that has three other engineers in unrelated fields. It has not been created for the purpose of securing this particular contract or insulating the employee from the Mexican government. The employee would be paid from the funds received from the Mexican government in connection with the proposed contract, although not all of the proceeds from the contract will go to him.

156

The employee expects to spend from seven to ten work days on the contract. He has worked previously on this project in an official capacity when he was made available for a year to work on it under the auspices of the State Department and the International Atomic Energy Agency. As a result, when the employee, together with others from the NRC, circulated a proposal to act as consultants, the Mexican government initiated discussions with him personally. Subsequent negotiations, we understand, have been conducted through the consulting firm.

At the outset we note that your agency has concluded that the proposed activity is permissible under the NRC conflict of interest regulations governing outside employment by NRC employees. 10 C.F.R. § 0.735–50 (1981). We have not been asked for our views concerning these regulations and therefore take no position as to them.

The Foreign Gifts and Decorations Act, 5 U.S.C. § 7342 (Supp. III 1979), generally prohibits employees from requesting or otherwise encouraging the tender of a gift or decoration, or from accepting or retaining a gift of more than minimal value. That section defines "gift" as "a tangible or intangible present (other than a decoration) tendered by, or received from, a foreign goverment." It seems clear that this Act only addresses itself to gratuities, rather than compensation for services actually performed, as would be the case here. We therefore conclude that 5 U.S.C. § 7342 is not applicable to the conduct contemplated.

The Emoluments Clause presents more difficult problems. Article I, § 9, cl. 8 provides:

> No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

A threshold question is presented as to whether the NRC employee is a "Person holding any Office of Profit or Trust" under the United States. We understand that he is not employed in a supervisory capacity. In past opinions, this Office seems to have assumed without discussion that the only persons covered by the Emoluments Clause were those holding an "Office" in the sense used in the Appointments Clause, Article II, § 2, cl. 2. We so stated in a letter from Deputy Assistant Attorney General Ulman to the General Counsel of your agency on July 26, 1976. It is not clear, however, that the words "any Office of Profit or Trust," as used in the Emoluments Clause, should be limited to persons considered "Officers" under the Appointments Clause. Both the language and the purpose of the two provisions are significantly different.

The latter finds its roots in separation of powers principles. The Supreme Court has said that "any appointee exercising significant authority pursuant to the laws of the United States" is an officer under the Appointments Clause and must be appointed in the manner prescribed by that Article. Employees are "lesser functionaries" subordinate to officers. *Buckley* v. *Valeo,* 424 U.S. 1, 126 & n. 162 (1976). *See generally* 424 U.S. at 124–137. The Emoluments Clause, on the

157

other hand, is designed "to exclude corruption and foreign influence." 3 M. Farrand, *The Records of the Federal Convention of 1787,* 327 (Gov. Randolph at the Virginia Convention) (rev. ed. 1937, 1966 reprint). Even though the Framers may have had the example of high officials such as "foreign Ministers" in mind when discussing the clause, 2 *id.* 389, its policy would appear to be just as important as applied to subordinates. The problem of divided loyalties can arise at any level. This may be particularly true in a field where, as here, secrecy is pervasive.

It is presumably for this reason that Congress, in enacting the Foreign Gifts and Decorations Act, assumed without discussion that under the Emoluments Clause its consent was necessary for *any employee* to accept a gift from a foreign government. 5 U.S.C. § 7342(a). *E.g.,* H.R. Rep. No. 2052, 89th Cong., 2d Sess. (1966). Although the view of Congress is not, by itself, conclusive, we are persuaded that the interpretation suggestion by the Foreign Gifts and Decorations Act is appropriate here. It is not necessary therefore for us to decide whether the NRC employee in this case must be considered an officer in the Appointments Clause sense.

The next issue presented under the Emoluments Clause is whether the payment in this case is "from any King, Prince, or foreign State." As noted, Congress has consented only to the receipt of minimal *gifts* from any foreign state as provided by 5 U.S.C. § 7342. Therefore, any other emolument stands forbidden unless the conclusion can be reached that the payment is not "from" a foreign government at all. We must thus decide whether payment through the consulting firm, in effect, shields the employee from payment by the Mexican government.

The question of when a foreign government, as opposed to an intermediary, is the actual source of a gift or payment has, as far as we know, only been discussed in writing once before. In 1980, this Office noted that no relevant opinion or commentary addressed this issue. We considered a proposed contract under which a large university provided expert consultants to a foreign government. The foreign government had no control over the selection of the experts and their payment and in the years in which the consulting relationship has been in effect, had never sought to influence the selection of experts. These matters were within the discretion of the university. This Office concluded therefore that the payment of an individual consultant could not be said to be "from" a foreign government.

In the present case, the retention of the NRC employee by the consulting firm appears to be the principal reason for selection of the consulting firm by the Mexican government. He is the firm's sole source of expertise and was, at least in part, selected because of prior experience gained while working on the same project in an official capacity. As we understand the situation, it seems clear that ultimate control, including selection of personnel, remains with the Mexican government. It is difficult to state what the outer limits of our earlier opinion may be. Each situation must, of course, be judged on its facts. Under the circumstances presented here, however, we cannot conclude that the interposition of the

American corporation relieves the NRC employee of the obligations imposed by the Emoluments Clause.

ROBERT B. SHANKS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*